UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
MONICA ALEXANDER,

               Plaintiff

      -against-                      <u>MEMORANDUM & ORDER</u>
                                   18-CV-2521 (JS)(ARL)

CENTRAL ISLIP SCHOOL DISTRICT,

               Defendant.
----------------------------------X
APPEARANCES
For Plaintiff:          Thomas Ricotta, Esq.
                   Ricotta & Marks, P.C.
                   31-10 37th Avenue
                   Long Island City, New York 11101

For Defendant:         Scott J. Kreppein, Esq.
                   Devitt Spellman Barrett, LLP
                   50 Route 111
                   Smithtown, New York 11787


SEYBERT, District Judge:

        Presently before the Court is the summary judgment motion (hereafter, "Summary Judgment Motion" or "Motion") (<u>see</u> ECF No. 29; <u>see also</u> Support Memo, ECF No. 29-3) of Defendant Central Islip School District (hereafter, "Defendant" or "School District") seeking the dismissal of the Complaint of Plaintiff Monica Alexander (hereafter, "Plaintiff"). Plaintiff opposes said Motion. (<u>See</u> Opp'n, ECF No. 35.) For the reasons stated herein, the Summary Judgment Motion is GRANTED.

BACKGROUND

I.   <u>Factual Background</u>

A. <u>Generally</u>[1]

Plaintiff suffers from anxiety.  (<u>See</u> Compl., ECF No. 1, ¶7.)  Since September 2001, she has been employed by the School District as a teacher and is currently assigned to the Mulligan Middle School (hereafter, "Mulligan School").  (<u>See</u> <u>id.</u>; <u>see also</u> <u>id.</u> ¶10.)  Plaintiff alleges that, throughout her employment, work colleagues and administrators have accused her of being "crazy", "nuts", a "whack", the "queen of Thorazine" and questioned whether her "ADHA is kicking in again."  (<u>Id.</u> ¶12.)  She further alleges that "[b]ased on . . . these comments, there has developed a perception among administrators that Plaintiff suffers from a disability."  (<u>Id.</u> ¶13.)  Yet, it is undisputed that "[n]o one at [S]chool 'would actually be aware of [Plaintiff's] mental health treatment,' as she 'never told anybody that [she] was on medication because' she believes 'in this country mental illness is frowned upon.'"  (56.1 Stmt., ECF No. 29-1, ¶8 (citing Alexander Dep. Tr., Ex. G, 66:11-20); <u>cf.</u> 56.1 Counter ¶8 (not disputing stated fact).)

---

[1]   For the convenience of the reader, the Court provides this general background summary for context, which has been gleaned primarily from Plaintiff's Complaint, given the dearth of general background information contained in the Defendants Rule 56.1 Statement (<u>see</u> ECF No. 29-1).

A. <u>As Relevant to this Action</u>[2]

During an April 1, 2016 school field trip, Plaintiff had a series of verbal altercations with students, staff and administrators from multiple schools (hereafter, the "Field Trip Incident"). (56.1 Stmt. ¶2; <u>cf.</u> 56.1 Counter ¶1 (disputing "how the incident is cast" and "add[ing] that Plaintiff had a coworker initiate an altercation with her, and she subsequently spoke to two students from another school who had recorded the interaction without permission or authorization, and their administrator, about their deleting the recording" (citing Alexander Dep. Tr., Ex. G, 14-15).) The School investigated the Field Trip Incident and, in connection therewith, "received a report that Plaintiff had made derogatory remarks regarding female Hispanic students." (56.1 Stmt. ¶3; <u>cf.</u> 56.1 Counter ¶3 ("Plaintiff does not dispute paragraph '3,' but disputes the truth of those allegations.").) Thereafter, on April 22, 2016, Plaintiff was placed on

---

[2] Unless otherwise stated, the facts are taken from the parties' Rule 56.1 Statements. (<u>See</u> Defendant's Rule 56.1 Statement, ECF No. 29-1 (hereafter, "56.1 Stmt."); Plaintiff's Rule 56.1 Counter Statement, ECF No. 35-1 (hereafter, "56.1 Counter").) Further, a standalone citation to a Rule 56.1 Statement denotes that either the parties or the Court has determined the underlying factual allegation is undisputed. Citation to a party's Rule 56.1 Statement incorporates by reference the party's citation(s), if any. Exhibits identified by letter are those of the Defendant and are attached to the Declaration of Scott J. Kreppein, Esq. (<u>see</u> ECF No. 29-2), Defendant's counsel; Plaintiff has not submitted any exhibits. Hereafter, the Court will reference exhibits by their respective letters only.

administrative leave.  (See id. ¶4; see also Compl. ¶14 (alleging April 22, 2014 to be the date Plaintiff "was advised that she was being suspended indefinitely").)

It is undisputed that "Plaintiff has previously been cautioned regarding maintaining professional boundaries with students and parents." (56.1 Stmt. ¶1.)  However, the parties dispute that while on administrative leave, Plaintiff "disregarded specific instructions not to contact students and parents." (Id. ¶5 (citing Section 913 Examination Report (hereafter, "Report"), Ex. C; also citing Alexander Dep. Tr., Ex. G, 66:11-20); cf. 56.1 Counter ¶5.)

At the School District Board's directive, Plaintiff underwent a Section 913 examination on July 10, 2016 (hereafter, "Exam").  (See 56.1 Stmt. ¶6; see also Report at 1, 2.)  During the Exam, Plaintiff: stated, inter alia, she received treatment for clinical anxiety from 2005 to 2008 (see 56.1 Stmt. ¶7); acknowledged discussing her employment issues with students and parents while on leave, asserting "she had a 'right' to tell her 'side of the story' and to try to convince students and parents that her suspension was 'unfair'" (id. ¶9); and, "explained that her neurologist had advised her in January 2016 to resume psychiatric treatment, and claimed that she had resumed psychiatric treatment on April 26, 2016" (id. ¶10 (citing Report)). "As a result of her psychiatric evaluation, an independent

psychiatrist determined . . . that Plaintiff was 'not mentally fit to return to her position as a teacher,' explaining that she requires 'ongoing and intensive psychiatric treatment' but her 'prognosis is limited' and it is 'highly unlikely that Ms. Alexander's mental health will sufficiently improve to enable her to function safely and appropriately in a school environment[,]' [and concluding] there is an 'unacceptably high' 'risk that she will continue to behave in a disruptive and unsafe manner.'" (Id. ¶11 (quoting Report); cf. 56.1 Counter ¶11 (disputing only the psychiatrist's conclusions).)

Thereafter, in September 2016 and pursuant to N.Y.S. Education Law § 3020-a, Plaintiff was charged with the following, arising from or related to the Field Trip Incident: Conduct Unbecoming a Teacher; Endangering the Welfare of a Student; and Insubordination. (See Sept. 2016 Charging Ltr., Ex. E.) However, after negotiations, in early February 2017, the parties reached a settlement, agreeing, among other things, that: the School District withdraw the charges against Plaintiff (see Settlement Agreement, Ex. F, ¶1); Plaintiff "den[y] guilt with respect to any of the charges" and "affirmatively den[y] having engaged in the conduct alleged" (id. ¶2); Plaintiff "remain on paid leave status through June 20, 2017, subject to the [School] District providing for an assignment within her tenure area that is not within the classroom" (id. ¶3 (emphasis added)); Plaintiff "undergo

counseling for a six month period . . . on a biweekly basis" with
the counseling "focus[ing] on teacher/student and
teacher/colleague boundaries" (id. ¶4); and, that "[a]s a
condition of [Plaintiff] returning to the classroom for the
2017/2018 school year, the [School] District . . . receive
confirmation from [Plaintiff]'s treating counselor" that said
"counseling has taken place for the six-month period" (id.; see
also 56.1 Stmt. ¶12).  Defendant contends "[i]t remains unclear if
Plaintiff underwent six months of counseling as required" because
she did not provide a clear response to the Defendant's follow-up
inquiry regarding who provided Plaintiff's counseling.  (See 56.1
Stmt. ¶13 (citing Alexander Dep. Tr. 82-83 (outlining Plaintiff's
responsive testimony "that she saw someone named 'Keith' or 'John'
whose last name was 'Pecorino' or some 'kind of a – a cheese name,'
but not necessarily during that six month time period, and they
were 'very far away' and she 'just want[ed] to go home and go to
bed' and did not have the 'mental capacity' to 'drive all the way
to Huntington or to drive all the way to Commack,' but she's
'trying' – as of October 2019 – 'to find something that's
closer'").)   In response, Plaintiff generally disputes this
contention, relying only upon her initial affirmative response
that she did undergo six months of counseling after February 2017.
(See 56.1 Counter ¶13 (citing Alexander Dep. Tr. 82:15 (simply
responding "Yes" to defense counsel's initial inquiry regarding

whether Plaintiff's underwent the required six months of counseling after February 2017)).)

II. <u>Procedural Background</u>

On May 16, 2017, Plaintiff filed a Charge of Discrimination against the School District with the Equal Employment Opportunity Commission ("EEOC") (hereafter, the "EEOC Charge"). (<u>See</u> Compl. ¶4; <u>see also</u> Pl.'s May 16, 2017 Cover Ltr. to EEOC, ECF No. 37-1 at ECF p.7 (indicating EEOC received the EEOC Charge on May 18, 2017).) Plaintiff served Defendant with a Notice of Claim on May 20, 2017. (<u>See</u> Compl. ¶4.) "A Right to Sue letter, dated January 29, 2018[,] was received on or about January 31, 2018." (<u>Id.</u>)

On April 29, 2018, Plaintiff commenced this action, alleging a deprivation of her Fourteenth Amendment rights under the Equal Protection Clause, unlawful disability discrimination, and corresponding retaliation for complaining of that discrimination pursuant to: 42 U.S.C. § 1983 (hereafter, "§ 1983") (<u>see</u> Compl. ¶¶28-30, First and Second Causes of Action); the Americans with Disabilities Act, 42 U.S.C. § 12101, <u>et seq.</u> (hereafter, the "ADA") (<u>see</u> <u>id.</u> ¶¶31-33, Third and Fourth Causes of Action); and, New York State Executive Law § 296 (hereafter, "NYSHRL § 296") (<u>see</u> <u>id.</u> ¶¶34-35). On August 20, 2018, Defendant filed its Answer, denying Plaintiff's alleged claims and raising

several affirmative defenses, including that Plaintiff's Complaint is time-barred.  (<u>See</u> Answer, ECF No. 9.)

After an unsuccessful attempt at settling this case through mediation (<u>see</u> ECF Nos. 14 and 16), the parties sought extensions of their discovery deadlines, which were granted.  (<u>See</u> ECF No. 16; Apr. 22, 2019 Elec. ORDER; <u>see also</u> ECF No. 22; Dec. 2, 2019 Elec. ORDER.)  Upon the conclusion of discovery, Defendant sought and was granted permission to file its Summary Judgment Motion.  (<u>See</u> Apr. 21, 2020 Min. Entry, ECF No. 28.)  The Motion was fully briefed on September 5, 2020, but on February 24, 2021, the Court granted the parties' joint request to supplement the record to include Plaintiff's 2017 EEOC Charge.  (<u>See</u> Consent Mtn. to Supp., ECF No. 37; Feb. 25, 2021 Elec. ORDER.)

As to Plaintiff's 14th Amendment Causes of Action, Defendant initially contends Plaintiff has failed to "reference what type of . . . claim she is attempting to assert" and that her allegations do not support either a due process or an equal protection claim.  (Support Memo at 7.)  As to Plaintiff's ADA claims, Defendant argues "Plaintiff engaged in disqualifying misconduct, has not identified an actual or perceived disability, and did not suffer an adverse employment action because of any such disability."  (<u>Id.</u> at 8; <u>see also</u> <u>id.</u> at 8-10 (arguing that Plaintiff is not a qualified individual); at 10-12 (arguing that Plaintiff is not disabled within the meaning of the ADA); at 12-

15 (arguing that Plaintiff was not discriminated against due to any alleged disability).)   Finally, as to Plaintiff's state law claims, Defendant asserts they are without merit and, in any event, untimely.  (See id. at 16.)

In opposition,[3] Plaintiff maintains that her § 1983 claims are two-fold.  First, Plaintiff argues that she asserts an equal protection cause of action, implicitly based upon a theory of selective enforcement.  (See Opp'n at 17 (arguing Plaintiff was "being subjected to discipline to which her similarly situated coworkers, including her colleague who was involved in the same incident, were not subjected, as well as her being subjected to a general pattern of hostility that her colleagues were not similarly subjected to").)   Second, Plaintiff argues that she asserts a purported Monell municipal liability claim based upon unconstitutional conduct undertaken pursuant to a policy or custom of the Defendant.  (See id.; see also id. at 18 (asserting "numerous official that were above the level of principal . . . engaged in and/or were aware of the conduct to which Plaintiff was being subjected, and allowed this conduct to continue, unabated").)   Regarding her ADA claims, Plaintiff begins by stating:

---

[3]   Plaintiff's Opposition is somewhat disorganized and does not address Defendant's argument in a linear, responsive manner; thus, in summarizing the Opposition, the Court has attempted to provide needed organization.

> Plaintiff was disabled and, more relevantly,
> was perceived to be disabled.  The record is
> replete with examples of members of Defendant,
> supervisors and colleagues alike, alleging
> that Plaintiff was crazy, didn't belong in the
> school, was not able to effectively teach, and
> needed to be in a straight jacket.  There is
> simply no reasonable argument . . . that there
> are not sufficient facts that support a
> finding that Plaintiff was perceived []as
> suffering from a disability under the ADA, and
> limited in her ability to perform the major
> life activities of thinking and working.

(Id. at 12.[4])  Plaintiff further maintains that since she is still

teaching for Defendant school district, she is able to demonstrate

that she is qualified for her position.   (See id. at 12-13.)

Finally, in support of her ADA hostile work environment claim, in

addition to asserting the applicability of the continuing

violation doctrine (see id. at 13), Plaintiff contends she "has

been subjected to regular and consistent harassment and incidents

that caused her great harm and embarrassment," with the Defendant

"allow[ing] an environment where all employees . . . [we]re allowed

to castigate [Plaintiff], due to a perception that she is mentally

ill, without any ramifications and recourse."  (Id. at 15.)

     As to her retaliation causes of action, Plaintiff

asserts that she engaged in unspecified protected activity (see

id. at 19 ("Plaintiff has alleged that she complained about a

---

[4]  Plaintiff dedicates several pages addressing the law regarding
one being perceived as disabled pursuant to the ADA.  (See Opp'n
at 10-12.)

hostile environment on multiple occasions throughout her employment, and was effectively told to stop complaining on multiple occasions.")), and that the undefined temporal proximity between her complaints and her suspension and other alleged disparate treatment establishes a causal connection sufficient to warrant a jury trial (see id. at 19-12).  Plaintiff does not directly address her state law claims.  (See id., in toto.)

In reply, Defendant argues, inter alia:  to the extent Plaintiff raises an equal protection claim, a "class-of-one equal protection claim[ is] not recognized in the context of public employment because of the highly discretionary and individualized nature of the employment relationship" (Reply at 3 (citing Engquist v. Oregon Dep't of Agric., 553 U.S. 591 (2008))); Plaintiff does not raise a Monell cause of action and the Complaint is devoid of allegations or facts regarding a policy that support such a claim (see id. at 4); Plaintiff was not discriminated against based upon a disability, but instead was subject to appropriate disciplinary action (see id. at 6); in any event, Defendant has established procedures to investigate allegations of discrimination, of which Plaintiff did not avail herself (see id. at 7); "there is neither evidence of nor any substantive factual allegation of any type of protected activity" in which Plaintiff participated, rendering her retaliation claim untenable (see id. at 7-8); Plaintiff's state law claims are untimely pursuant to N.Y.S. Education Law § 3813

(see id. at 8); and, Plaintiff's ADA claims may also be untimely (see id. at 9).

DISCUSSION

I.  Applicable Law

  A. The Summary Judgment Standard

    "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  ING Bank N.V. v. M/V TEMARA, IMO No. 9333929, 892 F.3d 511, 518 (2d Cir. 2018) (quoting FED. R. CIV. P. 56(a)); accord Jaffer v. Hirji, 887 F.3d 111, 114 (2d Cir. 2018).  In ruling on a summary judgment motion, the district court must first "determine whether there is a genuine dispute as to a material fact, raising an issue for trial." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted); see also Ricci v. DeStefano, 557 U.S. 557, 586 (2009) ("On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." (cleaned up)).

    In reviewing the record to determine whether there is a genuine issue for trial, the court must "construe the evidence in the light most favorable to the non-moving party," Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay, 868 F.3d 104, 109 (2d Cir. 2017) (cleaned up), and "resolve all ambiguities,

and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Davis-Garett v. Urban Outfitters, Inc., 921 F.3d 30, 45 (2d Cir. 2019) (quotations and citation omitted); see also Hancock v. County of Rensselaer, 823 F.3d 58, 64 (2d Cir. 2018) ("In determining whether there is a genuine dispute as to a material fact, we must resolve all ambiguities and draw all inferences against the moving party."). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci, 557 U.S. at 586 (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)); accord Baez v. JetBlue Airways Corp., 793 F.3d 269, 274 (2d Cir. 2015).

"The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP, 735 F.3d 114, 123 (2d Cir. 2013) (cleaned up); accord Jaffer, 887 F.3d at 114. "[W]hen the moving party has carried its burden[,] . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts[,]" Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec., 475 U.S. at 586-87), and must offer "some hard evidence showing that its version of the events is not wholly fanciful[.]" Miner v. Clinton County, N.Y., 541 F.3d 464, 471 (2d Cir. 2008) (quotations marks

and citation omitted).  The nonmoving party can only defeat summary judgment "by adduc[ing] evidence on which the jury could reasonably find for that party."  <u>Lyons v. Lancer Ins. Co.</u>, 681 F.3d 50, 56 (2d Cir. 2012) (cleaned up).  Since "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party[,] . . . [i]f the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986)(quotations and citations omitted).

B. <u>ADA Employment Discrimination</u>

"ADA employment discrimination claims are subject to the familiar burden-shifting analysis established by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973):  A plaintiff must establish a <u>prima facie</u> case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext."  <u>Cortes v. M.T.A. N.Y.C. Transit</u>, 802 F.3d 226, 231 (2d Cir. 2015) (quoting <u>Sista v. CDC Ixis N. Am., Inc.</u>, 445 F.3d 161, 169 (2d Cir. 2006)).

Here, Plaintiff's ADA discrimination cause of action is based upon allegations of a hostile work environment and adverse

employment actions.  To make out a claim of hostile work environment under the ADA, a plaintiff must show: "(1) that the harassment was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer."  Fox v. Costco Wholesale Corp., 918 F.3d 65, 74 (2d Cir. 2019) (internal quotation marks and citation omitted) (also holding that hostile work environment claims under the ADA are evaluated under the same standard as claims under Title VII).  Under this standard, a court looks "to the totality of the circumstances to determine whether a plaintiff has met this burden, including proof of the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with the plaintiff's work performance."  Id. (cleaned up; citation omitted); see also Pistello v. Bd. of Educ. of Canastota Cent. Sch. Dist., 808 F. App'x 19, 24 (2d Cir. 2020) (summary order) (quoting Fox, 918 F.3d at 74).

II.  The Instant Case

  A. Plaintiff's Counterstatement of Facts

        As an initial matter, the Court notes Plaintiff attempts to introduce new and additional facts for the Court's consideration

by including them in her Opposition.  (See Opp'n, Statement of
Facts, at 2-7.)  However, Local Rule 56.1(b) explicitly permits a
nonmovant to include "if necessary, additional paragraphs
containing a separate, short and concise statement of additional
material facts as to which it is contended that there exists a
genuine issue to be tried."  Here, Plaintiff has not complied with
the requirements of Local Rule 56.1(b) because she failed to
include the purported additional facts within her Rule 56.1
Counterstatement.  Furthermore, "[a] memorandum of law is not a
proper vehicle through which to present facts to the Court."
Genova v. County of Nassau, No. 17-CV-4959, 2020 WL 813160, at *9
(E.D.N.Y. Feb. 19, 2020) (collecting cases), aff'd 851 F. App'x
241 (2d Cir. Mar. 24, 2021) (summary order).  Therefore, the Court
declines to consider those purported additional facts presented
for the first time in Plaintiff's Opposition.  See Genova, 851 F.
App'x at 244 ("Plaintiffs who ignore their obligations under Local
Rule 56.1 do so at their own peril.").

### B. Plaintiff's Equal Protection Claim

Plaintiff does not allege to be a member of a protected
class, which is consistent with the Supreme Court's holding that
"disability" is not a protected classification under the Equal
Protection Clause.  See Bd. of Trs. of Univ. of Ala. v. Garrett,
531 U.S. 356, 366 (2001); see also Marino v. City Univ. of N.Y.,
18 F. Supp. 3d 320, 340 (E.D.N.Y. 2014) (stating "[p]ersons with

disabilities are not a suspect class"). "Nevertheless, 'courts have long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials.'" Bertuzzi v. Copiague Union Free Sch. Dist., No. 17-CV-4256, 2020 WL 5899949, at *23 (E.D.N.Y. Mar. 9, 2020) (quoting Lerner v. Hempstead Public Schs., 55 F. Supp. 3d 267, 281 (E.D.N.Y. 2014), report and recommendation adopted as modified, 2020 WL 3989493 (E.D.N.Y. July 15, 2020)).

This Court has stated that "[w]here the plaintiff does not allege he is a member of a protected class, his Equal Protection claim may only be based on two theories: selective enforcement or 'class of one.'" Chizman v. Scarnati, 218 F. Supp. 3d 175, 181 (E.D.N.Y. 2016) (citing Airday v. City of N.Y., 131 F. Supp. 3d 174, 184 (S.D.N.Y. 2015)). Moreover, as Defendant argues (see Reply at 3), and as this Court has previously ruled, "public employees are foreclosed from utilizing a 'class of one' theory." Chizman, 218 F. Supp. 3d at 181 (citing Engquist, 553 U.S. 591). While not the exemplar of clarity, it appears that the basis for Plaintiff's Equal Protection claim is that Defendant engaged in selective enforcement of its disciplinary procedures by subjecting her, but not similarly situated coworkers, to discipline. (See Opp'n at 17.)

Even though "[c]ourts in this Circuit are divided on whether selective enforcement claims are available in the public employment context post-Engquist," Bertuzzi, 2020 WL 5899949, at *24 (collecting cases), in this instance, Plaintiff has failed to raise a genuine dispute of material fact that would preclude granting summary judgment in Defendant's favor as to such a claim. "To prevail on a selective enforcement claim, a plaintiff must show (1) that she was treated differently from others similarly situated, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Lener, 55 F. Supp. 3d at 283 (internal quotation marks and citations omitted). Other than generally asserting that she was "subjected to discipline to which her similarly situated coworkers, including her colleague who was involved in the same incident, were not subjected" (Opp'n at 17), Plaintiff has not cited to any evidence supporting that assertion, either as a general matter or as it relates to Plaintiff being disabled or perceived to be disabled. However, it is not the Court's role to search the summary judgment record for evidence supporting a nonmovant's opposition. See, e.g., N.Y.S. Teamsters Conf. Pension & Ret. Fund v. Express Servs., Inc., 426 F.3d 640, 648-49 (2d Cir. 2005) (recognizing authority of district courts to institute local rules governing summary

judgment submissions, which permits courts "to efficiently decide" such motions "by relieving them of the onerous task of 'hunt[ing] through voluminous records without guidance from the parties'" (further citations omitted)); Ford v. Ballston Spa Cent. Sch. Dist., Nos. 05-CV-1198, 05-CV-1199, 2008 WL 697362, at *3 (N.D.N.Y. Mar. 13, 2008) (same).  Nonetheless, in its independent review of the summary judgment record, the Court finds no evidence from which a jury could conclude that Plaintiff was treated differently from similarly situated coworkers or "that any decisionmaker acted with spite or malice towards [P]laintiff."  Lener, 55 F. Supp. 3d at 283.  Thus, in the absence of any disputed material fact, Defendant is entitled to summary judgment in its favor as a matter of law as to Plaintiff's Equal Protection claim.

### C. Plaintiff's Purported *Monell* Claim

A fair reading of Plaintiff's Complaint does not support her contention that her § 1983 claims include a Monell cause of action.  (Compare Compl., with Opp'n at 17-18 (presenting argument in support of a failure to train or supervise Monell claim).) Moreover, it is well-settled that a plaintiff cannot amend her complaint by asserting new facts or theories in a brief.  See, e.g., Hurley v. Town of Southampton, No. 17-CV-5543, 2018 WL 3941944, at *18 (E.D.N.Y. Aug. 13, 2018) ("[I]t is well settled that '[p]laintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to [d]efendants'

motion to dismiss.'" (quoting K.D. ex rel. Duncan v. White Plains Sch. Dist., 921 F. Supp. 2d 197, 209 (S.D.N.Y. 2013))); see also Williams v. Black Entm't Television, Inc., No. 13-CV-1459, 2014 WL 585419, at *11 (E.D.N.Y. Feb. 14, 2014) ("Plaintiff cannot amend his pleadings through an opposition brief."); Fadem v. Ford Motor Co., 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005) ("It is longstanding precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs.").  As such, Plaintiff's Monell liability argument is presented without a basis and, therefore, is unsustainable.

Even assuming, arguendo, the Court found Plaintiff alleged a Monell cause of action, the claim could not withstand Defendant's Summary Judgment Motion.  Without citation to supporting evidence, Plaintiff argues that "[a]t a minimum, Defendant's actions and inaction in the face of multiple [but unidentified] complaints, establish . . . a failure to properly train or supervise [its] subordinates that a municipal policy is established thorough deliberate indifference."  (Opp'n at 18 (further stating, without support, that "numerous [unnamed] officials . . . engaged in and/or were aware of the conduct to which Plaintiff was being subjected, and allowed this conduct to continue, unabated").)  Yet, to make out a Monell claim based upon Defendant inadequately training or supervising its employees, Plaintiff is "required to 'identify a specific deficiency in the

[School District's] training program and establish that [that]
deficiency is 'closely related to the ultimate injury,' such that
it 'actually caused' the constitutional deprivation." White v.
City of N.Y., No. 17-CV-2404, 2019 WL 1428438, at *4 (S.D.N.Y.
Mar. 29, 2019) (quoting Amnesty Am. v. Town of W. Hartford, 361
F.3d 113, 129 (2d Cir. 2004); further citation omitted).   As
Defendant aptly contends, "Plaintiff fails to reference any type
of identifiable policy or substantiate [her] conclusory [Monell]
allegations with any facts."  (Reply at 4.)   Thus, in the absence
of the requisite evidence, Plaintiff's purported Monell claim must
fail.

    D. Plaintiff's Retaliation Claims[5]

         "In adjudicating retaliation claims, courts follow the
familiar burden-shifting approach of McDonnell Douglas."  Kaytor
v. Elec. Boat Corp., 609 F.3d 537, 552 (2d Cir. 2010); see also
McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973);
McGuire-Welch v. House of the Good Shepherd, 720 F. App'x 58, 62
(2d Cir. 2018); Konteye v. N.Y.C. Dep't of Educ., No. 17-CV-2876,
2019 WL 3229068, at *4 (S.D.N.Y. July 18, 2019) ("To bring a
successful retaliation claim, Plaintiff must thus establish a
prima facie case under the burden-shifting McDonnell Douglas

_____

[5]  Despite not explicitly informing the Court, Plaintiff addresses
her Retaliation Claims collectively in Part III of her Opposition.
(See Opp'n at 19-22.)   The Court does likewise herein.

Framework." (citing <u>Kwan v. Andalex Grp. LLC</u>, 737 F.3d 834, 845 (2d Cir. 2013))); <u>Lore v. City of Syracuse</u>, 670 F.3d 127, 157 (2d Cir. 2012)).  To present a <u>prima facie</u> case of retaliation,[6] a plaintiff-employee:

> must establish that (1) the employee was engaged in a[ protected] activity . . . , (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action.

<u>Weissman v. Dawn Joy Fashions, Inc.</u>, 214 F.3d 224, 234 (2d Cir. 2002); <u>see also</u> <u>Castro v. City of N.Y.</u>, 24 F. Supp.3d 250, 268 (E.D.N.Y. 2014)(quoting <u>Weissman</u>).

Here, absent citation to supporting evidence, Plaintiff asserts she "has alleged that she complained about a hostile environment on multiple occasions throughout her employment, and was effectively told to stop complaining on multiple occasions," thereby establishing her engagement in a protected activity.

---

[6] Establishing a <u>prima facie</u> claim of retaliation requires the same showing under § 1983, the ADA, and NYSHRL. <u>See, e.g.</u>, <u>Treglia v. Town of Manlius</u>, 313 F.3d 713, 719 (2d Cir. 2002) ("In order to establish a <u>prima facie</u> case of retaliation, [plaintiff] must show that: (1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity." (citations omitted)); <u>Gonzalez v. City of N.Y.</u>, 377 F. Supp. 3d 273, 290 (S.D.N.Y. 2019) (applying the same standard to a retaliation claim under § 1983); <u>Denicolo v. Bd. of Educ. of City of N.Y.</u>, 328 F. Supp. 3d 204, 213 (S.D.N.Y. 2018) (applying the same standard to a retaliation claim under NYSHRL).

(Opp'n at 19-20.)   Not so.   As Defendant correctly states, "there is neither any evidence of nor any substantive factual allegation of any type [of] protected activity."  (Support Memo at 12; Reply at 7.)   Plaintiff's amorphous, unsubstantiated, general claim of having complained on multiple occasions – without the benefit of any temporal context or the identity of the parties to whom those complaints were made - woefully fails to establish that she engaged in any protected activity or the Defendant's knowledge of such purported protected activity.   It is well-established that unadorned allegations, like those asserted here, are insufficient to defeat summary judgment in this context.  See, e.g., McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004) ("[W]ith a motion for summary judgment adequately supported by affidavits, the party opposing the motion cannot rely on allegations in the complaint, but must counter the movant's affidavits with specific facts showing the existence of genuine issues warranting a trial." (citing FED. R. CIV. P. 56(c)); Patacca v. CSC Holdings, LLC, No. 16-CV-0679, 2019 WL 1676001, at *17 (E.D.N.Y. Apr. 17, 2019) ("[W]hen opposing a summary judgment motion, one cannot rely upon the allegations in one's complaint to defeat the motion."); Elliott v. Gouverneur Tribune Press, Inc., No. 13-CV-055, 2014 WL 12598275, at *2 (N.D.N.Y. Sept. 29, 2014) ("[I]t is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings." (citing Celotex Corp. v. Catrett,

477 U.S. 317, 324 (1986); further citation omitted)).   In the absence of any identifiable, specific protected activity or person (or persons) to whom Plaintiff relayed such purported protected activity, and given the dearth of competent evidence demonstrating Plaintiff's engagement in, and Defendant's knowledge of, any protected activity, Plaintiff cannot establish a <u>prima facie</u> case of any retaliation in this instance.

Notwithstanding her inability to establish either engagement in a protected activity or the Defendant's knowledge of same, the Court briefly addresses the contention that Plaintiff "can establish a causal connection[, <u>i.e.</u>, the fourth element of a retaliation <u>prima facie</u> case,] through the timing and sequence of events, as well as through the pretextual nature of the actions taken against" her.   (Opp'n at 21.)   "[A] plaintiff may establish the causal connection indirectly by showing that the protected activity was closely followed by the retaliation, or directly by showing evidence of retaliatory animus."   <u>Cosgrove v. Sears, Roebuck & Co.</u>, 9 F.3d 1033, 1039 (2d Cir. 1993) (internal quotation marks and citation omitted).   "Negative reactions by an employer to a plaintiff's complaints of discrimination have been deemed indicative of retaliatory animus." <u>White v. Dep't of Corr. Servs.</u>, 814 F. Supp. 2d 374, 390 (S.D.N.Y. 2011) (citing <u>Mandell v. County. of Suffolk</u>, 316 F.3d 368, 383 (2d Cir. 2003)).

Plaintiff contends that her "complaints create a temporal proximity upon which a reasonable fact finder could conclude that her suspension and the alleged disparate treatment thereafter was a byproduct of a retaliatory animus." (Opp'n at 21.) The Court is unpersuaded. As Defendant asserts, "Plaintiff's allegations are too vague and conclusory to establish any sequence of events." (Reply at 7-8.) In the absence of competent evidence showing precisely when and to whom Plaintiff made her alleged complaints, there is no "basis for the assertion that [Plaintiff's] paid suspension and referral for a mental fitness evaluation were prompted by some type of unspecified informal complaint" rather than Plaintiff's behavior during the Field Trip Incident. (Reply at 8 (citing Report); see also, e.g., Apr. 7, 2016 Personnel Memo from Principal Hudson to Pl., ECF No. 30-1 (hereafter, the "Personnel Memo").) Thus, Plaintiff's reliance upon indistinct complaints of harassment is misplaced because, by their vague nature, those complaints do not demonstrate a temporal proximity that would indirectly establish the requisite causal connection. Since Plaintiff has not developed or advanced an alternative, retaliatory animus argument to establish the required prima facie causal connection (Opp'n at 21) – and the Court finds no competent evidence supporting such a position – there is no basis to find a causal connection between Plaintiff's alleged protected activity

and her suspension and Defendant's alleged disparate treatment thereafter.

In sum, upon the record presented and viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could not conclude that Plaintiff has established any <u>prima facie</u> case of retaliation. Hence, Defendant is entitled to summary judgment in its favor as to Plaintiff's Retaliation Causes of Action as a matter of law.

E. <u>Plaintiff's ADA Hostile Work Environment Claim</u>

Even if the Court were to assume, <u>arguendo</u>, Plaintiff was perceived to be disabled (<u>cf.</u> Reply at 6 (Defendant arguing that "an observation that something might be wrong with Plaintiff based upon displays of 'poor judgment, irresponsible behavior and poor impulse control' is not the same as a perceived disability" (quoting <u>Stoplner v. N.Y. Univ. Lutheran Med. Ctr.</u>, No. 16-CV-0997, 2018 WL 4697279, at *22 (E.D.N.Y. Sept. 29, 2018)); <u>see also</u> Support Memo at 12), she is unable to sustain her ADA hostile work environment claim upon the record presented.

In recently recognizing that hostile work environment claims are actionable under the ADA, the Second Circuit instructed that "[a] plaintiff alleging a hostile work environment claim under the ADA . . . 'must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the

conditions of her working environment.'"   Fox, 918 F.3d at 74
(quoting Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002)).
That is, the workplace must be "so severely permeated with
discriminatory intimidation, ridicule, and insult that the terms
and conditions of [the employee's] employment were thereby
altered."  Alfano, 294 F.3d at 373 (emphasis added).

Plaintiff contends she "has been subjected to regular
and consistent harassment and incidents that caused her great harm
and embarrassment" since "all employees, new and old, are allowed
to castigate [her], due to a perception that she is mentally ill,"
"with students and other teachers present to hear [Plaintiff]
bullied about medication she should be on, or that she is crazy,
or should be in a straight jacket." (Opp'n at 15-16; id. (further
stating "the totality of the circumstances here establish [sic]
that [Plaintiff] has been the victim of a concerted, District-
wide, harassment that was focused on her being minimized,
diminished, and berated due to a perceived disability").) However,
even if Plaintiff had presented evidence supporting this argument,[7]

---

[7]  To the extent Plaintiff would have the Court rely upon her
"Statement of Facts" provided in her Support Memo, the Court has
declined that invitation.  (See supra at 15-16.)  However, the
Court notes that many of the incidents of which Plaintiff complains
occurred prior to her 2013 assignment to the Mulligan School,
making them too temporally attenuated, and not sufficiently
continuous and concerted, to support her claim of "concerted,
District-wide, harassment" by Defendant here.  Cf. Stryker v. HSBC
Secs. (USA), No. 16-CV-9424, 2020 WL 5127461, at *15 (S.D.N.Y.
Aug. 31, 2020) (granting employer-defendant summary judgment where

which she has not, her ADA hostile work environment claim would fail because she has not articulated how the alleged harassment altered the conditions of her employment.   (Cf. Opp'n at 14 (Plaintiff asserting that "[a] hostile work environment exists 'when the workplace is permeated with 'discriminatory intimidation, ridicule and insult,' . . . that it is 'sufficiently severe or pervasive to alter the conditions of the victim's employment.'" (emphasis in original) (quoting Tomka v. Seiler Corp., 66 F.3d 1295, 1305 (2d Cir. 1995); further citation omitted).)

To the extent Plaintiff implicitly relies upon her subsequent paid administrative leave, that reliance is unavailing. The record evidence demonstrates that after the Field Trip Incident, Plaintiff attended an April 4, 2016 meeting with, inter alia, the Mulligan School principal to discuss said Incident. (See Personnel Memo.)   During the meeting, Plaintiff: did not deny having a volatile confrontation with another teacher in front of staff and students during the field trip; admitted "yelling loud[ly] in an unprofessional manner toward students" and physically removing a student's hat; and, indicated that certain

---

"[t]here is no evidence of physically threatening or humiliating actions against the plaintiff" and "no evidence that co-workers engaged in ongoing and pervasive comments mocking the plaintiff's disability" and where "the plaintiff ha[d] also not shown that any of the actions taken against him were based on his disability).

behavior of female, illegal immigrant students was "nasty".  (Id.)
As noted, thereafter, Plaintiff was: placed on paid administrative
leave on April 22, 2016; directed not to discuss her suspension
with students or parents; and ordered to submit to a Section 913
evaluation, i.e., the Exam.  (See Report.)  There is no record
evidence supporting the contention that Plaintiff believed the
aftermath of the Field Trip Incident was, in some fashion,
harassment or discrimination against her.  Nor, under the totality
of the circumstances, is there any evidentiary basis to impute
discriminatory animus upon the Defendant's decision to place
Plaintiff on paid administrative leave.

Moreover, and notably, during the subsequent Exam, when
"asked why she believed the school board ordered the [Section] 913
evaluation," Plaintiff replied that she did not know.  (Id. at 4.)
Plaintiff also reiterated that during the Field Trip Incident,
"after a point [she] was not acting appropriately."  (Id.)  As
Defendant argues, the Exam was "a rationally-based job-related
evaluation that was consistent with business necessity, and there
is no evidence to suggest any . . . pretext."  (Support Memo at
13.)  Indeed, the ADA expressly provides that it is not
discriminatory for an employer to "require a medical examination"
or otherwise "make inquiries of an employee as to whether such
employee is an individual with a disability or as to the nature or
severity of the disability" if "such examination or inquiry is

shown to be job-related and consistent with business necessity." 42 U.S.C. §12112(d)(4)(A); see also Grassel v. Dep't of Educ. of City of N.Y., No. 12-CV-106, 2017 WL 1051115, at *7 (E.D.N.Y. Mar. 20, 2017) (finding the "need to determine a teacher's psychological capacity to properly carry out his duties is a vital business necessity"; collecting cases of courts finding examinations a vital business necessity where school personnel exhibited "worrisome behavior at work or emotional volatility").

Similarly, Plaintiff's paid administrative leave cannot be construed as an alteration of the conditions of her employment, because "'[l]egitimate reprimands by an employer are not abuse. Nor are the disciplinary actions taken against [a plaintiff] in response to complaints . . . evidence' of [a] hostile work environment." Stryker, 2020 WL 5127461, at *15 (quoting Fox, 918 F.3d at 75). Significantly, Plaintiff does not contend that her administrative paid leave altered the conditions of her employment. (See Opp'n, Part II(A)(3), pp. 13-16.) At bottom, Plaintiff has failed to elicit any evidence that her placement on administrative leave was related in any manner to her alleged complaints of harassment.

F. Plaintiff's NYSHRL § 296 Discrimination Claims

Plaintiff has not responded in any meaningful manner to Defendant's arguments challenging her NYSHRL claims. (See Opp'n, in toto.) Thus, to the extent Plaintiff's NYSHRL claims are not

subsumed within her hostile work environment and retaliation claims (which the Court has determined, <u>supra</u>, cannot withstand summary judgment), Plaintiff's passing reference to her NYSHRL claims result in a waiver of those claims. <u>See</u> <u>Jackson v. Fed. Express</u>, 766 F.3d 189, 198 (2d Cir. 2014)("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."); <u>see also</u> <u>Camarda v. Selover</u>, 673 F. App'x 26, 30 (2d Cir. 2016)("Even where abandonment by a counseled party is not explicit, a court may infer abandonment from the papers and circumstances viewed as a whole." (internal quotation marks and citation omitted)); <u>Neurological Surgery, P.C. v. Travelers Co.</u>, 243 F. Supp.3d 318, 329 (E.D.N.Y. 2017)(deeming an argument waived because it was not addressed in a party's opposition brief); <u>Patacca</u>, 2019 WL 1676001, at *13 (collecting cases and deeming claims waived that were not fully addressed in opposition papers); <u>Petrisch v. HSBC Bank USA, Inc.</u>, No. 07-CV-3303, 2013 WL 1316712, at *17 (E.D.N.Y. Mar. 28, 2013)(collecting cases holding that where party fails to address arguments in opposition papers on summary judgment motion, the claim is deemed abandoned).

Even if that were not so, Plaintiff's NYSHRL claims could not be sustained because she failed to comply with § 3813 of the New York Education Law, which addresses the requirements for

presenting such claims against school districts. Pursuant to §
3813, Plaintiff was required to have first presented Defendant
with "a written verified claim upon which such action . . . is
founded . . . within three months after the accrual of such claim
. . . ."  N.Y. Educ. Law § 3813(1); see also Peritz v. Nassau
County Bd. of Coop. Educ. Servs., No. 16-CV-5478, 2019 WL 2410816,
at *3 (E.D.N.Y. June 7, 2019)("[A]s Plaintiff is asserting an
employment discrimination claim against an educational entity
enumerated in § 3813(1), she was required by that section to serve
a written verified claim upon [that entity] within three months of
the accrual of her claim.").  "'Notice of claim requirements are
construed strictly' and '[f]ailure to comply with these
requirements ordinarily requires dismissal for failure to state a
cause of action.'"  Peritz, 2019 WL 2410816, at *2 (alteration in
original) (quoting Hardy v. N.Y.C. Health & Hosps. Corp., 164 F.3d
789, 793-94 (2d Cir. 1999)).

      As an initial matter, Plaintiff has failed to produce
evidence that she served the Defendant with a written verified
claim; rather, she simply alleges "a Notice of Claim was served on
Defendant relating to these claim [sic] in on [sic] May 20, 2017."
(Compl. ¶4.)  This fails to establish strict compliance with §
3813(1).  See Peritz, 2019 WL 2410816, at *4 ("[T]he burden is on
Plaintiff to demonstrate compliance with the notice of claim
requirements." (citations omitted)).  Further, Plaintiff has

failed to demonstrate these claims are timely:[8] assuming, <u>arguendo</u> (1) an accrual date of April 22, 2016, <u>i.e.</u>, the date Plaintiff was notified she was being placed on paid administrative leave, Plaintiff would have had to serve Defendant with her Notice of Claim by July 21, 2016; (2) an accrual date of June 10, 2016, <u>i.e.</u>, the date of Plaintiff's Exam, Plaintiff would have had to serve Defendant with her Notice of Claim by September 8, 2016; (3) an accrual date of September 16, 2016, <u>i.e.</u>, the date charges pursuant to New York Education Law § 3020-a were brought against Plaintiff, Plaintiff would have had to serve Defendant with her Notice of Claim by December 15, 2016; and (4) an accrual date of February 8, 2017, <u>i.e.</u>, the date the parties entered into their Settlement Agreement, Plaintiff would have had to serve Defendant with her Notice of Claim by May 9, 2017. None of these scenarios have borne out. Hence, if the claims were properly before the Court, Plaintiff's NYSHRL claims would be time-barred.

* * *

To the extent not explicitly addressed, the Court has considered the Plaintiff's remaining arguments in opposition to the Summary Judgment Motion and finds them to be without merit.

---

[8] Similar to having failed to specifically identify the alleged protected activity or activities in which she engaged, Plaintiff has also failed to clearly identify any purported adverse action.

<u>CONCLUSION</u>

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Summary Judgment Motion (ECF No. 29) is GRANTED.  The Clerk of Court is directed to enter judgment in favor of Defendant, dismiss Plaintiff's Complaint in its entirety, and, thereafter, close this case.

**SO ORDERED.**

 /s/ JOANNA SEYBERT
JOANNA SEYBERT, U.S.D.J.

Dated:    September __22__, 2021
          Central Islip, New York